UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

**Insulated Wall Holdings, LLC,**                Case No. 23-24709
                                                 Chapter 11 (Subchapter V)
Debtor.

**MOTION OF THE DEBTOR FOR AUTHORITY TO USE CASH COLLATERAL, PROVIDE ADEQUATE PROTECTION, AND FOR MODIFICATION OF THE AUTOMATIC STAY TO PERMIT SOUTHSTAR TO APPLY PROCEEDS FROM FACTORED INVOICES**

Insulated Wall Holdings, LLC (the "Debtor"), moves, pursuant to § 363(c), for authority for use of cash collateral on the terms stated in this motion (the "Motion"). The proposed terms for use of cash collateral constitute adequate protection under § 363(c)(2)(B) and (3) of the Bankruptcy Code. The Debtor is also requesting modification of the automatic stay pursuant to §362(d)(1) to permit SouthStar Financial, LLC ("SouthStar") to apply the proceeds of factored invoices to its secured claim upon receipt of the invoices. The Debtor is requesting, pursuant to § 363(c)(3), in a separate motion **a preliminary hearing** on this motion **on or before October 19, 2023** in order to avoid irreparable harm to the Debtor's bankruptcy estate. (Approval of the modification of the automatic stay for SouthStar's benefit is not being sought on a preliminary basis, only a final basis.)

In support of this Motion, the Debtor states:

## Cash Collateral Rule 4001(b)(1)(B) Concise Statement of Relief Requested

(i) *Entities that may have an interest in cash collateral:* First American Bank Corporation ("First American"), SouthStar, the United States Department of the Treasury – Internal Revenue Service, the State of Wisconsin Department of Workforce Development, the State of Wisconsin Department of Revenue and Transcon Steel of Texas, Inc.

(ii) *Purposes for the use of cash collateral:* Continued operation of the Debtor's businesses without interruption. Fully described in paragraphs 5-14.

(iii) *Material terms, including duration, of the use of the cash collateral:* The Debtor seeks authority to use cash collateral to allow continuous operation of its business during the pendency of this bankruptcy case, including on a preliminary and final basis.

(iv) *Any liens, cash payments, or other adequate protection that will be provided to each entity with an interest in the cash collateral:* Replacement liens in the same priority and to the same extent as existed pre-petition; extension of liens as allowed under the Bankruptcy Code and additional liens on machinery, equipment and furniture to the extend the replacement liens are insufficient to replace collateral being used by the Debtor; fully described in paragraph 14.

## Jurisdiction

1. The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 16, 2023 (the "Petition Date"). An order for relief was entered on the same day.

2. The Debtor continues to manage its business and affairs as a debtor-in-possession pursuant to § 1184 of the Bankruptcy Code.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a) and § 157(a), and the order of reference in this district entered pursuant to § 157(a).

4. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (M). It concerns the administration of the Debtor's estate and the Debtor's use of cash collateral.

### Background on the Debtor's Business

5.      The Debtor manufacturers insulated walls that are sold to builders.[1] (David T. Wallach Declaration, at ¶ 3.) It operates under the tradename, Wally Walls. It recently changed its business model from supplying insulated walls for commercial business construction to supplying residential construction. Due to the pandemic, the Debtor's commercial business significantly decreased. Annual sales fell from $2.3 million in 2020 to $1.3 million in 2022. However, residential construction has a better outlook. As sales decreased, costs did not decrease in direct proportion. The Debtor faces debts that it cannot timely pay. However, the Debtor now operates on a profitable basis. (*Id*.)

6.      The Debtor's chapter 11 filing was due to First American Bank Corporation ("First American") obtaining a judgment of approximately $740,000. The Debtor was unable to reach a resolution with First American so that the Debtor could continue its business. The Debtor filed chapter 11 to avoid First American's collection efforts that would immediately shut down the Debtor's business. *(Id.*, ¶ 4.)

7.      The Debtor's chapter 11 exit strategy is to restructure its debt under a plan of reorganization and continue to operate its manufacturing business. The Debtor expects to have a plan of reorganization timely filed within 90 days of the Petition Date. (*Id*., ¶ 7.)

### Description of Liens Against Cash Collateral

8.      The Debtor searched the UCC financings statements filed in Delaware, Illinois and Wisconsin under the Debtor's name, and legal filings in Wisconsin Circuit Courts.[2] Based

---

[1] The evidentiary support for this Motion is the Declaration of David T. Wallach, the sole Manager and Chief Executive Officer of the Debtor. The declaration is filed separately and contemporaneously with this Motion.

[2] The Debtor was organized in Delaware.

3

upon the searches, the following entities may have an interest in cash collateral of the Debtor:

(a) **SouthStar Financial, LLC.**[3] It filed a financial statement listing collateral that covered all of the debtor's assets, including cash collateral, on June 25, 2018 as no. 2018 4344525 with the Delaware Secretary of State and on June 25, 2018 as no. 18008777332 with the Wisconsin Department of Financial Institutions. Subsequently it filed continuation statements in both Delaware and Wisconsin. When the financing was obtained with SouthStar, it entered into an Intercreditor Agreement with the Debtor and First American that provided for SouthStar to have a lien in cash collateral superior to the lien of First American. The Debtor concludes that SouthStar's lien in cash collateral is properly perfected and superior to all other liens in cash collateral. The nature of the financing with SouthStar is factoring. Presently, the Debtor factored four invoices that total approximately $80,000. Upon collection of those invoices, the SouthStar will retain the entire amount to cover its charges. The Debtor seeks to have the stay modified to permit SouthStar to retain payment on the invoices. Payment will be sent to a lockbox controlled by it. Upon payment of the invoices, the Debtor believes it will owe nothing to SouthStar. However, SouthStar has not provided the Debtor with a recent statement confirming this.

(b) **First American Bank Corporation.** The Debtor entered into loans with Southport Bank in 2015 that were guaranteed by the Small Business Administration (the

---

[3] It filed the original UCC financing statement under the name of SouthStar Capital, LLC with statements of additional secured party's name as SouthStar Financial, LLC and SouthStar Financial SPV, LLC. The loan documents are with SouthStar Financial, LLC.

"SBA") up to $490,000. Southport Bank apparently merged with First American in 2018 and First American succeeded to the interests in the loans with the Debtor. Southport filed its UCC financing statement covering cash collateral on December 30, 2015 as no. 2015 6343833. First American filed an amendment changing the name of the secured party on June 8, 2018 and a continuation statement on August 20, 2020. As described in the preceding paragraph, First American entered into an Intercreditor Agreement with SouthStar to subordinate First American's interest in cash collateral to SouthStar. First American obtained a judgment against the Debtor in the Kenosha Circuit Court in the amount of $739,867 that was docketed on October 4, 2023. The Debtor has not been notified that the loans were assigned to the SBA and has no reason to believe that First American still does not own the loans. First American has a lien on cash collateral and a guaranty by Davit T. Wallach up to $490,000. It also has a lien on equipment, but the lien is unperfected. The Debtor's attorneys did not locate a financing statement in place covering equipment. The Debtor preliminarily believes that the collateral owned by the Debtor securing First American's claim is less than the value of the claim, making the claim of First American partially unsecured and partially secured.

  **(c)  United States Department of the Treasury – Internal Revenue Service.** The IRS filed a Federal Tax Lien on October 20, 2020 in the amount of $11,117. The Debtor believes this lien was satisfied. However, the IRS may have other filed tax liens covering the approximately $125,000 of taxes due. The IRS may have an interest in cash collateral.

  **(d)  State of Wisconsin Department of Workforce Development.** It filed a

5

Case 23-24709-gmh  Doc 6  Filed 10/16/23  Page 5 of 14

penalty warrant on November 11, 2022 in the amount of $3,062 that remains unpaid. It may have an interest in cash collateral.

   (e) **State of Wisconsin Department of Revenue.** It filed a delinquent tax warrant on September 5, 2023 in the amount of $2,514 that remains unpaid. It may have an interest in cash collateral.

   (f) **Transcon Steel of Texas, Inc.** The Debtor is involved in litigation with Transcon in a state court action in Travis County, Texas. Transcon sold the business to the Debtor. As part of the sale, $100,000 was withheld pending a post-closing inspection of equipment. The obligation was secured by a lien against the equipment sold. However, the Debtor's counsel search the records and Wisconsin and Delaware and did not locate a UCC financing statement perfecting the lien against equipment.

### The Debtor's Relevant Assets and Collateral

9. The following is a summary of the Debtor's assets. All amounts are estimated approximations:

| | | | |
|---|---|---|---:|
| (a) | Checking Account at Great Lakes Credit Union | $ | 1,000 |
| (b) | Accounts Receivable (factored to SouthStar) | $ | 60,000 |
| (c) | Accounts Receivable (not factored to SouthStar) | $ | 40,000 |
| (d) | Inventory (50% of book value used) | $ | 100,000 |
| (e) | Employee Retention Credit | $ | 165,000 |
| (f) | Furniture and Equipment (50% of cost used) | $ | 1,000 |
| (g) | Machinery & Equipment (2015 appraisal at market value used) | $ | 683,000 |

|     |     |     |     |
|-----|-----|-----|-----|
| (h) | Litigation Receivable (the gross amount due from two parties is $190,000; because they are in litigation the values are unknown) | | $ Unknown |
| (i) | Machinery & Equipment (2015 appraisal at market value used) | | $   683,000 |
| (j) | Note Receivable from Wolf Real Estate | | $   150,000 |
|     | **Total Approximate Assets** | | **$ 1,200,000** |

10. SouthStar appears to have the only perfected liens against machinery, equipment and furniture ("ME&F"). The Debtor believes that it will be fully paid from the four invoices totaling approximately $60,000 that were factored with SouthStar, leaving the ME&F submit only to the liens of the IRS and State of Wisconsin. After secured interests of SouthStar (if any amount remains due), the IRS and the State, the Debtor believes it has equity of more than $500,000 in ME&F that is not subject to a lien.

11. First American has a lien against accounts receivable that are not factored, inventory and the note receivable to Wolf Real Estate. The approximate value of its collateral is $290,000. Preliminarily, its claim against the Debtor is unsecured in the amount of $450,000 and secured in the amount of $290,000.

### The Debtor's Need for Use of Cash Collateral

12. The Debtor requires the immediate use of cash collateral so it may continue to operate its business. The Debtor's use of such collateral is necessary to avoid immediate and irreparable harm to its estate pending confirmation of a chapter 11 plan of reorganization. The Debtor is able to secure limited debtor-in-possession financing of $50,000 to address immediate

cash needs. However, it still needs the use of inventory, accounts receivable and work in process to meet its ongoing operational costs. (David T. Wallach Declaration, at ¶ 22.)

13. A six-week cash projection for the Debtor that shows the cash necessary to be expended for the Debtor's business to operate is attached to the Declaration of Davit T. Wallach as **Exhibit A.** As the projections show, the Debtor will use funds from limited debtor-in-possession financing of up to $50,000 to cover immediate cash needs but will run out of cash and its business will cease if the Debtor is not permitted to use cash collateral. (*Id.*, ¶ 23.) The Debtor is seeking authorization to incur debtor-in-possession financing of a maximum of $50,000 in a separate motion.

## Proposed Adequate Protection

14. The Debtor proposes the following adequate protection for use of cash collateral:

(a) *Replacement Liens.* The Debtor will grant all creditors with an interest in cash collateral replacement liens of the same priority to the same extent in the cash collateral as existed immediately before the Petition Date (collectively, "Replacement Liens"). The Replacement Liens offered will be deemed automatically perfected upon entry of an order granting this Motion without the necessity of a creditor taking possession, filing financing statements, mortgages or other documents; provided, however, that the Debtor will execute any necessary perfection documents upon the request of a creditor holding a valid interest in cash collateral. No creditor shall improve its secured position as a result of the Replacement Liens.

(b) *Modification as to the Stay for SouthStar.* The automatic stay will be modified to the extent necessary to permit SouthStar to receive the proceeds from the four invoices factored with it and apply the proceeds as SouthStar receives the proceeds to its secured

claim.

(c) *Extension of Pre-Petition Liens*. The liens of creditors with an interest in cash collateral pursuant to any security agreements will extend to the collateral under the Replacement Liens, and the products and proceeds thereof under § 552(b) of the Bankruptcy Code.

(d) *Adequate Protection Payments.* No adequate protection payments are being provided.

(e) *Additional Collateral.* To the extent that any Replacement Lien is insufficient to replace the cash collateral being used, the Debtor grants a post-petition lien on machinery, equipment and furniture to each creditor with a perfected interest in cash collateral in the same order of priority as the creditors had in relation to each other before the Petition Date. The additional liens will be deemed automatically perfected upon entry of an order granting this Motion without the necessity of a creditor taking possession, filing financing statements, mortgages or other documents; provided, however, that the Debtor will execute any necessary perfection documents upon the request of a creditor holding a valid interest in cash collateral. No creditor shall improve its secured position as a result of the additional lien granted to it.

(f) *Reporting.* The Debtor will provide reports of its receipts and distributions consistent with the monthly reporting requirements for chapter 11 cases.

(g) *Insurance.* The Debtor will continue to maintain general property and liability coverage consistent with their coverage before the Petition Date and requirements under the loan documents with First American that existed as of the Petition Date with respect to its collateral.

(h)     *Other*. The Debtor will comply with all non-monetary terms of the loan documents with First American except solvency-related covenants or other provisions contrary to the Bankruptcy Code or any order of the Court to the extent that any term conflicts with the Bankruptcy Code or with any other order of the Court.

## Legal Authority for Relief Requested

15.     Under the Bankruptcy Code, a debtor cannot use cash collateral unless it has consent from the entity that has an interest in cash collateral, or "the court, after notice and a hearing authorizes such use." § 363(c)(2)(B). Cash collateral includes a debtor's "cash, negotiable instruments, documents of title, securities, deposit accounts, [including] the proceeds, products, offspring, rents, or other profits of property… ." § 363(a).

16.     Expenditures and use of the cash collateral will preserve and maintain the Debtor's business. Without the ability to use the cash collateral, the Debtor would eventually be forced to liquidate its business, which would unjustifiably jeopardize the interests of all creditors.

17.     The Bankruptcy Code does not define "adequate protection," but § 361 provides examples such as (a) cash payments to the extent the collateral is decreasing in value, (b) giving the secured lender replacement liens on the collateral, and (c) granting other relief as will result in giving the secured lender the indubitable equivalent of the lender's interest in the collateral.

18.     The purpose of adequate protection is to guard against diminution in the value of a secured creditor's collateral and to preserve the secured creditor's position as of the date the bankruptcy was filed. *See In re Guerrero*, 536 B.R. 817, 825 (Bankr. E.D. Wis. 2015); *Resolution Trust Corp. v. Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3rd Cir. 1994).

19.     In this case, the Debtor is proposing to use the cash collateral by granting

10

Replacement Liens and additional liens if those are inadequate, complying with the non-monetary terms of the loan documents with First American, excluding solvency-related covenants or other provisions contrary to the Bankruptcy Code or any order of the Court.

20. The proposed adequate protection will protect the secured creditors from diminution of the value of their collateral positions. The Debtor submits that the adequate protection proposed in this Motion is fair and reasonable.

21. The Debtor's use of the cash collateral will not prejudice any party in interest because, absent the authorization to use of cash collateral, the Debtor's business operations would quickly shut down. Accordingly, the interests of the secured creditors and other creditors in the Debtor's case will be best served by permitting the Debtor's to use the cash collateral.

22. Additionally, as part of the adequate protection for SouthStar, the Debtor requests modification of the automatic stay under §362(d)(1) "for cause." This is not being requested on an expedited basis. The Debtor's counsel has reviewed the financing statements filed and the financing documentation with SouthStar. SouthStar's claim is properly perfected and it has a lien position superior to all other creditors. Allowing SouthStar to apply the proceeds of the invoices factored with it will reduce and likely eliminate it as a secured creditor, making its collateral available to provide adequate protection to other parties and eliminating costs to the Debtor.

## Request for Preliminary Approval on an Expedited Basis

23. The Debtor requests approval of this motion on a preliminary basis under § 363(c)(3) of the Bankruptcy Code, which authorizes approval on a preliminary basis if there is a reasonable likelihood that the Debtor will prevail at the final hearing. However, preliminary approval before 14 days' notice must only be used for the cash collateral that "is necessary to

11

Case 23-24709-gmh    Doc 6    Filed 10/16/23    Page 11 of 14

avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(b)(2).

24. The Debtor's interim budget, **Exhibit A** (attached to the declaration of David T. Wallach), shows expenses that must be paid to avoid irreparable harm to the Debtor's estate pending a final hearing on this motion. (Wallach Declaration, ¶¶ 22-23.)

25. If these expenses are not paid, the Debtor's business will fail and its going concern value will be lost. (*Id.*, ¶ 23.) The Debtor needs to pay its employees and sales representatives. (*Id.*, ¶ 15.) The next payroll is October 20, 2023. (*Id.*, ¶ 16.) The damage to the Debtor's business constitutes "immediate and irreparable harm" to the Debtor's estate that is addressed by preliminary approval of the use of cash collateral. *In re GWLS Holdings, Inc.*, 2008 WL 8178095, *7 (Bankr. D. Del. October 22, 2009) (interim financing and use of cash collateral allowed the orderly continuation of the debtors' business operations, and thus, avoided immediate irreparable harm to the debtors).

26. The expenses that must be paid on a preliminary basis before final approval of the use of cash collateral are projected for the next 6 weeks on **Exhibit A**. The Debtor requests the ability to incur up to 15% more than the amounts listed without further approval, and to incur more than 15% of the amounts listed with the approval of First American or the Court.

27. In order to meet its operating needs, the Debtor requests that a preliminary hearing be held on the interim approval of the use of cash collateral no later than **October 19, 2023**. The Debtor is submitting both an order approving preliminary use of cash collateral and final use of cash collateral. A separate motion requesting a preliminary hearing is being filed with this Motion.

28. The Debtor further requests approval of its use of cash collateral and adequate protection on a final basis, and requests that the Court set a hearing on final approval as provided in Fed. R. Civ. P. 4001(b). The Debtor has submitted a separate proposed order granting approval on a final basis.

### Notice of the Motion

29. Service on the Motion must be on the list of 20 largest creditors and on any other party as the Court directs. Rule 4001(c)(1)(C). The Debtor proposes that it give notice to the 20 largest creditors, First American, SouthStar, the United States Department of the Treasury – Internal Revenue Service, the State of Wisconsin Department of Workforce Development, the State of Wisconsin Department of Revenue, the Subchapter V Trustee and the United States Trustee.

### Conclusion

Wherefore, the Debtor requests the approval of its use of cash collateral, modification of the automatic stay to permit SouthStar to receive and apply the proceeds of the factored invoices, and grant of adequate protection on a preliminary basis and final basis on the terms as specified in this motion and other relief as is just.

Dated: October 16, 2023.

*/s/ Evan P. Schmit*
Jerome R. Kerkman
Evan P. Schmit
Gregory M. Schrieber

Kerkman & Dunn
Proposed Attorneys for the Debtor

13

<u>P.O. Address:</u>

839 N. Jefferson St., Suite 400
Milwaukee, WI 53202-3744
Phone: 414.277.8200
Facsimile: 414.277.0100
Email: eschmit@kerkmandunn.com

14

Case 23-24709-gmh    Doc 6    Filed 10/16/23    Page 14 of 14